IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| United States of America, | Case No. 3:18-cr-00479-JGC-1 |
| Plaintiff, | |
| v. | **ORDER** |
| Holden N. Gallagher, | |
| Defendant. | |

The defendant, Holden Gallagher, plead guilty on June 16, 2021 to all three counts in an indictment that alleged: 1) sexual exploitation of a child in violation of 18 U.S.C. § 2251(a); 2) receipt and distribution of visual depictions of minors engaged in sexually explicit conduct in violation of 18 U.S.C. § 2252(a)(2)(A); 3) possession of visual depictions of minors engaged in sexually explicit conduct in violation of 18 U.S.C. § 2252(a)(4)(B). Sentencing was to have occurred on Oct. 27, 2021.

It did not occur because on Oct. 8, 2021, the defendant filed a Motion to Withdraw Plea, (Doc. 70), and then filed a Supplemental Motion, (Doc. 77). The Government opposes the motion, (Doc. 80), and the defendant has filed a reply, (Doc. 82).

For the reasons that follow, I deny the motion.

### Background

The defendant's motion asserts that he is entitled to withdraw his plea for three reasons, namely that: 1) I failed to follow a local rule that required me to accept the plea agreement when he entered his plea; 2) under Fed. R. Crim P. 11(d)(1), because I have never accepted the plea he

1

is free to withdraw it; and 3) under Fed. R. Crim. P. 11(d)(2), because, even if I accepted the plea, he has a fair and just reason for withdrawing it.

In support of his contention that I failed to accept the plea, he points to a statement I made towards the end of the June 16, 2021 plea hearing. The prosecutor asked: "[t]he plea agreement was signed by all the parties and emailed to Tina this morning. Would the Court then be holding off on accepting that until after the PSR comes in?" (Doc. 69, pgID 307:9-:12). I responded as follows:

> "No. I'll probably go ahead and have it reviewed right now and make sure that . . . And I'm sure there's basically, you know, I assume that all that would vary significantly in any way is the factual basis; otherwise, it's the standard and conventional terminology and so forth, but it will be reviewed. And once I do review it, I will accept the -- I assume I will accept the agreement and enter a judgment accordingly and that should happen sometime today or tomorrow.

(*Id.*, 307:13-:23).

That, however, is not all that I said before ending the plea hearing. Shortly before the transcript portion that the defendant's brief cites, I stated:

> There will be a finding that the defendant is competent to plead, that he understands his basic rights and the consequence of waiving those rights. He's read the plea agreement. He's aware of the nature of the charges against him to which he may be pleading guilty and the consequences upon conviction. He's also aware of the federal sentencing guidelines, their effect and operation. He has reviewed, read, understands, and endorsed the plea agreement, and he has done so. And his plea, when and if offered, will be offered knowingly, intelligently and voluntarily. And there is an adequate factual basis in light of the Government's summary of its evidence upon which a jury could find him guilty of the charges against him. So that being said, Mr. Gallagher, how do you plead to each and every one of the charges against you?

(*Id.*, pgID 302:7-:21)

The defendant responded: "Guilty, Your Honor." (*Id.*, pgID 302:22).

I then stated:

> Okay. Very well. There will be a finding of -- the plea of guilty will be accepted as to each and every one of the charges. Upon my review sometime later today of the plea agreement, that finding will be entered and judgment will be entered accordingly, and the matter will be now set for or scheduled for sentencing.

(*Id.*, pgID 303:1-:7).

I then set sentencing for October 27, 2021. (*Id.*, pgID 303:8-:11).

In support of defendant's contention that he has a fair and just reason for withdrawing his plea, his attorney represents that, with regard to his "personal and emotional state," he:

> was in chaos in the days leading up to and during the change of plea hearing. In early June the defendant was being housed at the Federal Correctional Institution at Milan, Michigan (FCI) [sic]. During that time the defendant was a victim of a sexual assault. Defendant's change of plea hearing was close in time to the sexual assault. The sexual assault incident calls into question the defendant's emotional and mental nature during the hearing, as well as the circumstances underlying the plea hearing and the decision to accept the plea.

(Doc. 70, pgID 313-14).

The defendant's initial brief also indicates that the defendant's prior exposure to the criminal justice system involved state, not federal court, and his penalty was fines and community control. (*Id.*, pgID 314). The defendant also contends that withdrawal would not result in any prejudice to the Government. (Doc. 82, pgID 719-20).

The defendant's Supplemental Brief undertakes to provide evidentiary underpinning to the defendant's claim to have been a sexual assault victim shortly before the plea hearing. (Doc. 77). Those materials include the defendant's affidavit and a copy of a handwritten letter. (Docs. 77-1, -2, pgID 680-82).

Defendant's affidavit states that, after initially being housed at the Northeast Ohio Correctional Center (NEOCC) near Youngstown, Ohio, he was transferred to FDC Milan. While there, another inmate sexually assaulted him in June 2021, shortly before he entered into his Plea Agreement. The inmate sought to extort money from him, and his cellmate had witnessed other inmates threatening him for the same purpose. (Doc. 77-1, pgID 680).[1]

The defendant does not specify when he notified anyone about the alleged sexual assault. From all that the record shows, his allegations first came to the attention of the authorities on August 3, 2021, when his attorney, Neil McElroy, called Supervisory Deputy Alex Rutter of the United States Marshal Service in Toledo, informing him about the defendant's allegations. *See* (Doc. 80-1, pgID 702). I infer that, at the earliest, the defendant notified Mr. McElroy on August 2nd. I do so, knowing from my experience with Mr. McElroy, that he would not have delayed in communicating such serious allegations to the Marshal's Service.

Moreover, I infer – and nothing in the record is to the contrary – that the defendant first notified his mother on August 2, 2021. I reach this conclusion because a Corrections Officer at Milan heard the defendant say in a phone call to his mother, "that he can't go into details, but the same thing happened to him here twice, that had happened at another prison." (Doc. 81, pgID 713).

From the record, it appears that the first time the defendant told anyone at Milan FDC about the alleged assaults occurred after Deputy Rutter had alerted the institution on August 3rd about Mr. McElroy's phone call to him.

---

[1] During an August 3, 2021 interview with a prison investigator, defendant also reported that he had suffered another incident of sexual abuse during the week of June 14th to 18th. (Doc. 81, pgID 712).

4

In the affidavit to his motion, the defendant claims he was not sleeping because of his fear of further sexual assaults. His plea, he now claims, resulted from his hope that he'd quickly be removed from Milan. (*Id.*, pgID 680-81).[2]

Defendant avers that he didn't mention anything in court at the time of his plea for fear of repercussions, being punished, and being place in the Special Housing Unit and thereby denied his access to his support system, including his family, friends, attorney, and commissary. (*Id.*, pgID 680). He states that "[h]ad I been of a clear mind I would not have executed or entered into the Plea Agreement before this Court." He concludes by stating he is making his request to withdraw his plea for just reasons and not due to a change of heart. (*Id.*, pgID 681).

In response to these contentions, the Government provides affidavits from Mr. McElroy and Deputy Rutter, along with a series of investigation reports from Milan. (Docs. 80-1, -2, pgID 701-09); (Doc. 81, pgID 710-14).

In his affidavit, Deputy Rutter affirms, inter alia, that after Mr. McElroy's August 3rd call, he notified the authorities at Milan about the defendant's allegations. (Doc. 80-1, pgID 702 ¶ 4).

Deputy Rutter also stated that he was aware that the defendant was unhappy about being moved from NOCC, to which he'd been transferred because of his "disruptive behavior" earlier at the Lucas County Jail and the Corrections Center of Northwest Ohio. (*Id.*, ¶ 6).

Though Deputy Rutter had "received multiple calls from Mr. Gallagher's mother over a few months, she never referenced a fear for her son's safety or that he was the victim of any assaults." (*Id.*, ¶ 7).

---

[2] Neither his affidavit nor his motion explain why, if he was so anxious to get out of Milan, he had not told anyone in authority who could have made that happen.

Mr. McElroy provided an affidavit to the Government. (*Id.*, pgID 703-09). He affirms, inter alia, that he met with the defendant at FDC Milan on June 4, 2021, (*id.*, pgID 703 ¶ 3) - twelve days before the plea hearing. During that meeting the defendant said nothing about a sexual assault. (Doc. 80-2, pgID 703 ¶ 3).

Mr. McElroy avers that during the plea hearing, the defendant "did not report to [Mr. McElroy] at that time any fears of being housed at Milan FDC [or] any information that would make [Mr. McElroy] question whether he understood the plea or whether it was entered knowingly and voluntarily." (*Id.*, ¶ 4).

Mr. McElroy's affidavit makes no reference to any complaint by the defendant about either sexual assaults or concerns for his future safety until months after the defendant entered his plea.

On June 10th, six days before the defendant's plea, Mr. McElroy's office had relayed to him a message from the defendant's mother, Barb Rasey, that she would like to speak with Mr. McElroy more about the defendant getting out on bond. (Doc., 80-2, pgID 707, 709). On June 17th, the day after the defendant's plea, Mr. McElroy's office relayed a message to him from Ms. Rasey that the defendant wanted to talk with him about "conditions"[3] but that she did not know what the defendant meant by that. (*Id.*, pgID 708). There is no indication in Ms. Rasey's June 17th email that the defendant had ever told her anything about the alleged sexual assaults.

On learning on August 3, 2021 of Mr. McElroy's notification about the alleged sexual assaults on the defendant, the Bureau of Prisons ("BoP") undertook an investigation. (Doc. 81, pgID 710-14).

---

[3] I conclude, in light of the mother's earlier inquiry about release on bond, that the term "conditions" referred to possible conditions of pretrial release, rather than "conditions" at Milan.

6

The BoP's investigative report begins with the results of an initial interview with the defendant on August 3, 2021. He told the investigator that "around mid-June" he had been sexually assaulted twice by an individual whom he identified by initials. He could not remember the exact date. (*Id.*, pgID 711).

In a further interview on August 4th, the defendant, when asked if he could narrow down the timeframe, said that the first incident occurred sometime during the week of June 7th through June 11th. The other occurred, he related, sometime during the period June 14th through June 18th. (*Id.*, pgID 712)

During another interview on August 3, 2021, the defendant told the interviewer, after relating the sexual assault incidents, that, because his assailant had been removed, he was "completely safe in the Unit." (*Id.*, pgID 713) He also stated that after talking with his mother and attorney, he thought it best to report the incidents[4] because there was another inmate who also had been sexually assaulted. (*Id.*).

Likewise, as the Bop's Final Report indicated, the Government also disbelieves the bona fides of the defendant's claim that he was twice sexually assaulted. Thus, the only evidence that the sexual assault occurred, and that some form of professionally undiagnosed PTSD affected his ability to enter a plea knowingly, intelligently, and voluntarily given was his own statements to that effect.

## Discussion

The defendant, as noted, advances three theories in support of his motion to withdraw the plea. These are that: 1) I did not comply with a Local Rule that according to the defendant,

---

[4] I note that the defendant never affirmatively notified the institution about *any* alleged assaults until Deputy Rutter's phone call prompted the institution's investigation and ensuing interview with him.

7

mandated acceptance of the Plea Agreement on the day he entered his plea; 2) I never accepted the plea, thereby entitling him to vacate it under Fed. R. Crim. P. 11(d)(1); and 3) he otherwise has shown fair and just reason to permit withdrawal under Fed. R. Crim. P. 11(d)(2).

I disagree.

### 1. There is No Local Rule that Regulates the Plea Taking Process.

The defendant's motion makes a passing reference to a "local rule" he contends provides that my failure to enter an order accepting the plea agreement and entering judgment at the same time that I accepted the plea, means that the plea itself has not been accepted effectively for the purposes of Rule 11(d). (Doc. 70, pgID 311). The cited quote is not from the Court's local rules but is a link to my own discussion of "Criminal Cases" on our Court's website. https://www.ohnd.uscourts.gov/judge-carr-criminal-cases

The language defendant quotes references what happens when I have referred the taking of a plea to our Magistrate Judge. It simply states that once I've received the Magistrate Judge's Report & Recommendation, "I will review that recommendation, along with the recording or a transcript of the proceeding. Assuming there are no problems or objections, I accept the plea and enter judgment accordingly." *Id.*

Thus, the defendant's erroneous claim that he's entitled to withdraw his plea because I somehow violated a (non-existent) local rule utterly lacks a factual basis.

### 2. I Accepted the Plea

First, the defendant has waived his claim that I did not accept the plea. This is so because he failed to respond to the Government's argument that, as the record shows, I in fact accepted the plea. *Rolle v. Kimbler*, No. 2:20-CV-35, 2020 WL 5016801, at *2 (S.D. Ohio); *Wood v.*

*United States Bank Nat'l Ass'n*, No. 5:17-cv-2234, 2019 WL 1255229, at *3 (N.D. Ohio) (Adams, J.).

Second, the record in fact shows that, contrary to the defendant's claim, I clearly and unequivocally accepted his guilty plea. I stated: "Okay. Very well. There will be a finding of – the plea of guilty will be accepted as to each and every one of the charges." (Doc. 69, pgID 302:1-:3). That's it, and that's all that was necessary.

Thus, here, again, there is no merit to the defendant's request to withdraw under Fed. R. Crim. P. 11(d)(1). His motion comes after the plea's acceptance. Thus, it is not timely under that rule.

### 3. I Was Free to Defer Considering the Plea Agreement

Though, for whatever reason, I did not do as I said I would - review the Plea Agreement that day and enter judgment accordingly - that is no basis for granting the defendant's motion. This is so, because defendant's theory that I could not accept the plea without accepting the Plea Agreement at the same time is simply mistaken. The Supreme Court has held that, "[g]uilty pleas can be accepted while plea agreements are deferred, and the acceptance of the two can be separated in time." *United States v. Hyde*, 520 U.S. 670, 674 (1997).

Moreover, defendant's argument misunderstands the basic structure of Rule 11(c). That rule distinguishes three types of plea agreements; those in which: 1) the Government agrees to dismiss or not bring other charges, Rule 11(c)(1)(A); 2) the parties agree to recommend to the court that "a particular sentence or sentencing range is appropriate," Rule 11(c)(1)(B); and 3) the parties agree on a specific sentence or sentencing range, Rule 11(c)(1)(C). The plea agreement here is a Rule 11(c)(1)(B)-type agreement. *See* (Doc. 63, pgID 229, 233-34).

9

When the parties agree to a specific sentence or sentencing range pursuant to subsection 1(C), that subsection provides that "such a recommendation or request binds the court once the court accepts the plea agreement." In contrast, when the parties agree pursuant to subsection 1(B) to recommend or request a particular sentence or sentencing range, the rule states that "such a recommendation or request does not bind the court."

As a result, a court must accept, reject, or defer until sentencing a subsection 1(C) agreement, because if it accepts the agreement, it is bound by the agreement's terms. Whereas, for a subsection 1(B) agreement, there is no need and no provision for the court to formally accept the plea agreement. Instead, the court decides independently, after reviewing the Presentence Report and other sentencing hearing evidence, whether or to what extent to adopt the parties' recommendation at the time it pronounces sentence.

"Accordingly, when a defendant proceeds to enter a plea of guilty, with a plea agreement containing a nonbinding recommendation under rule 11(c)(1)(B), the plea is binding whether or not the court rejects the plea agreement." Thomas W. Hutchinson, *Federal Sentencing Law & Practice*, § 6B1.1 (2020).

In any event, either at, or before sentencing, I will review the Plea Agreement. On doing so, I fully expect that I will find it acceptable and state so on the record.

I note that the defendant's citation to and reliance on *United States v. Andrews*, 857 F.3d 734 (6th Cir. 2017), is misplaced. In that case, the court did not accept the plea – instead, it stated explicitly that it was postponing its acceptance of the plea, along with that of the Plea Agreement, until sentencing. *Id.* Here, I unequivocally accepted the plea. That controls, not *Andrews*.

**4.**

**5. No Just and Fair Cause to Allow Withdrawal of the Plea**

The defendant also seeks to withdraw his plea under Fed. R. Crim. P. 11(d)(2)(B) on the basis that he has "fair and just cause" for doing so. He claims that the distress and ongoing trauma resulting from the sexual assaults rendered his plea involuntary – i.e., he was not, due to the ongoing impairment of his mental faculties, competent to plead. In reviewing that claim, I apply several factors:

1. The amount of time that elapsed between the plea and the motion to withdraw it;

2. The presence (or absence) of a valid reason for the failure to move for a withdrawal earlier in the proceedings;

3. Whether the defendant has asserted or maintained his innocence;

4. The circumstances underlying the entry of the guilty plea;

5. The defendant's nature and background;

6. The degree to which the defendant has had prior experience with the criminal justice system; and

7. The potential prejudice to the Government if the motion to withdraw is granted.

*United States v. Ellis*, 470 F.3d 275, 281 (2006) (citing *United States v. Bashara*, 27 F.3d 1174, 1181 (6th Cir. 1994)).

I may consider other things as well, and no single factor controls my decision. *United States v. Bazzi*, 94 F.3d 1025, 1027 (6th Cir. 1996).

First, I am willing to accept, arguendo, for purpose of this Order only, that the defendant did not unduly delay filing his motion. It took time for him to secure new counsel, and for her, in turn, to investigate what had happened and prepare the motion. That factor does not weigh against the defendant.

Second, the foregoing applies to the second factor as well.

Third, the defendant made no admissions at the time Agents executed the search warrant and took him into custody. This factor weighs in the defendant's favor.

Fourth, the circumstances underlying and leading up to the guilty plea weigh against the defendant – and do so, in my opinion, to a dispositive degree.

Except for the defendant's self-serving, post-hoc statements about his mental state, there is no evidence in the record to support his contentions. Thus, I agree that there is good reason to doubt those statements' bona fides.

Defendant told no one about the alleged incidents until nearly seven weeks after his plea. He does not complain about any inattention to him on Mr. McElroy's part. He did not ask the authorities to move him from the prison unit in which he allegedly had been attacked. By the time he finally got around to telling his attorney, apparently on or about August 2nd, *see* (Doc. 80-2, pgID 704, 708), he acknowledged to prison officials that he felt "completely safe in the unit" where he was housed because the prison had moved his alleged assailant to another housing unit. (Doc. 81, pgID 713).

In addition, Deputy Rutter states that before learning from Mr. McElroy about the defendant's sexual assault claim, he had received several phone calls in June and July 2021 from the defendant's mother. At no time, he states, did the mother ever mention any concerns about her son's safety. (Doc. 80-2, pgID 704). As already noted, the record indicates that in all likelihood the defendant first told her about the alleged incidents during a phone call on August 2nd.

There is, as well, the defendant's nearly constant inability to be more specific about when the incidents occurred – i.e., repeated references to the middle of June. Even though, on one

12

occasion, he told an investigator that the first had taken place during the week of June 7th to 11th and that the second attack took place during the week of June 14th to 18th, (Doc. 81, pgID 712), at no other time has he given any precise indication that either incident may have occurred before his June 16th plea.

Such uncertainty casts a long shadow over his present, self-serving claim of being so mentally agitated that he was unable to participate in a knowing, intelligent, voluntary, and competent way at the plea hearing. Certainly he gave no outward signals or signs during the hearing that suggested that any distress corrupted his ability to participate knowingly and capably.

Moreover, and most tellingly, after the hearing, he remained silent about the alleged assaults for almost seven weeks. He sought neither help nor protection from the institution. His otherwise unsupported say-so now is far less persuasive than his weeks-long silence. And there is nothing in the record to indicate that Ms. Rasey, through whom he communicated by email with Mr. McElroy, was aware of what had happened.

Fifth, the defendant's nature is one of long-standing, perverse attraction to various kinds of child pornography involving multiple affirmative acts on his part. This gives him every motive to do what he can to escape the punishment – a minimum twenty-five years' imprisonment – that awaits him if his motion fails. This weighs against the defendant.

Sixth: the defendant is no stranger to the criminal justice system. To be sure, as his attorney argues, his prior experience was in state court, where his punishment was, in relative terms, slight in the extreme. That being so, he no doubt is ill-prepared to comprehend fully the consequences of his federal conviction. But so is anyone, whether he has had any experience

with the criminal justice system. Indeed, most who are caught violating federal child pornography laws have no such experience. In this case, this is an entirely neutral factor.

Seventh, I likewise find the potential prejudice to the Government to be, in all likelihood, fairly modest. Though there may well be some degree of duplication of preparation, the number of witnesses is probably few, the extent of the evidence would appear to be relatively modest, and the trial, I would estimate, would appear to take no more than a week from voir dire to verdict. For the Government, granting the motion would be a bump in the road, not a tip-over stick in the spokes on route to a conviction. This factor thus also is neutral.

There is another factor not specified in *Ellis*. There is no reason to believe that the evidence of the defendant's crimes is anything less than overwhelming. That is the way it routinely is in child pornography cases. Assuming that that is so, it is yet another reason – though none is necessary – for finding no fair <u>and just</u> reason to grant the defendant's motion.

I conclude that the defendant has failed to show that it is more likely than not that the sexual assaults, if they occurred, disturbed, in any way, much less a meaningful way, his ability to participate in a fully competent, comprehending, comprehensive way in the plea proceedings.

Thus, I entirely reject his come-lately claim that any mental trauma from the alleged assaults so corrupted his emotional stability that he was unable to proffer a competent and voluntary plea.

## Conclusion

The defendant has failed in all respects to meet his burden of showing entitlement to withdraw his plea.

It is, accordingly, hereby

ORDERED THAT the defendant's motion to withdraw his plea of guilty, (Doc. 70), be, and the same hereby is, denied.

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge
